MARGARET A. GREEN, ADMINISTRATRIX, ETC., OF W. SHELDON GREEN, DECEASED, RESPONDENT, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, APPELLANT.

*Common council of Binghamton — power of, to regulate the speed of engines and cars within the city limits — 1867, chap. 291, tit. 4, sec. 4.*

The charter of the city of Binghamton empowered the common council thereof "to regulate and control the running of engines and cars through the city and the rate of speed of the same." Pursuant to this authority the common council passed an ordinance providing that "no railroad company or corporation, whose track passes through or within the limits of the city, shall run any locomotive, engine or engines, or any car or cars, or any train of cars, or permit the same to be run by their agent or agents, or by any person or persons in their employ, while passing through said city at a greater rate of speed than at and after the rate of ten miles per hour, under the penalty of twenty-five dollars for each offense."

*Held,* that the ordinance was not intended to apply to engines used by the companies in moving cars and making up trains at places within their own yards, and in and about their own stations, which were not within the limits of any public street or thoroughfare.

*It seems,* that the common council might, under the power conferred upon it by the charter, regulate the speed of engines and cars at all places within the city limits, even in places outside of the limits of public streets. (Per BARKER, J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*E. F. Babcock,* for the appellant.

*George T. Spencer,* for the respondent.

BARKER, J.:

The deceased was run over and killed by an engine owned and used by the appellant in its business within the corporate limits of the city of Binghamton. The line of the appellant's road was between the cities of Albany and Binghamton. At the latter place it made connections with the New York, Lake Erie and Western Railroad Company, and there existed between the companies an

arrangement by which passengers and freight were transferred from one to the other and loaded and unloaded. Cars were also transferred to and run upon the tracks of each company. The transfer of the passenger traffic, and cars connected therewith, took place on the tracks of the Erie Company, in the yard in front of its passenger depot. By an agreement, the terms of which are not revealed by the case, the appellant had the right and privilege of using for the passage of its trains, locomotives and cars, the tracks of the Erie Company, necessary to be used in the interchange in the business before mentioned. The deceased, at the time he was killed, was in the employ of the Erie Company as the conductor of a freight train which at that time was on one of the tracks near by the place of injury. . To the north of this track there were two other tracks and parallel thereto. The middle one of these tracks was the one used by the appellant in delivering to and receiving from the Erie Company passenger cars. On the north track there was standing an engine and tender belonging to the Erie Company. The deceased was in charge of a freight train which came upon the depot grounds, and the same came to a stand, and he left the same and went into an office in the depot building to receive further orders. After receiving orders and being ready to move his train to the west, through the yard in which the exchange of cars took place, he passed from the depot building over the tracks upon which his train stood, and the track used by the appellant, to the engine standing on the north track and stepped upon the steps of the engine and remained there for a few moments, then he stepped down for the purpose of passing to his own train, and as he passed over the track used by the appellant, he was struck by an engine backing down towards the east and was run over. The space between the two tracks was about six feet. To the east of the passenger depot and the place of collision is a public street, crossed by all the tracks mentioned, and the place of collision is about 100 feet west of the west line of such street. There were other tracks, used by the Erie road, on the ground mentioned, but it is unneces sary to locate them in this connection.

As the deceased was the servant of the Erie Railroad Company, engaged in the management of a train passing through the yard where the collision took place, it is claimed by the respondent that

he was, when injured, in the line of his duty and in a place where he had a right to be, as a servant of that company, and was not an intruder on the rights and privileges enjoyed by the defendant in running its engines and cars on the track designated.   This position the respondent must be able to maintain, otherwise she should have been nonsuited.   If the deceased was a trespasser upon the track on which the appellant had the right to run its cars then it owed him no duty, except that which every person owes to others, not to do them any intentional wrong or injury.   In disposing of the case as now presented, we may assume that the deceased was rightfully upon the track which he was crossing when injured, and as to him the appellant was required to run its engines and cars with due care and caution so as not to do him an injury.

One of the negligent acts imputed to the appellant was the running of the engine at a dangerous rate of speed in view of the place and character of the business there transacted, and the respondent contended on the trial that it was one of the proximate causes which occasioned the death of the deceased.   The evidence tended to prove that the rate of speed was from ten to fifteen miles an hour at the time of the collision.   On the trial the respondent contended that this rate of speed was in violation of an ordinance of the city of Binghamton, and being so, was some evidence as bearing on the question of the defendant's negligence.   By its charter the common council of the city of Binghamton was given the power " to regulate and control the running of engines and cars through the city and the rate of speed of the same."   (Laws of 1867, chap. 291, tit. 4, § 4.) Acting upon this authorization the common council passed an ordinance as follows: " No railway company or corporation whose track passes through or within the limits of the city shall run any locomotive, engine or engines, or any car or cars, or any train of cars, or permit the same to be run by their agent or agents, or by any person or persons in their employ, while passing through said city, at a greater rate of speed than at and after the rate of ten miles per hour, under the penalty of twenty-five dollars for each offense," which the plaintiff introduced in evidence.   The jury were instructed that by force of this ordinance the defendant was prohibited from running its train faster than ten miles an hour; that the existence of the ordinance and the violation of the same by the

appellant was not of itself negligence on the part of the persons operating the locomotive. It (the ordinance) was a circumstance for the jury to take into account in determining whether or not the locomotive was at that particular time operated at an unsafe rate of speed. To the reception of the ordinance in evidence and to that portion of the charge mentioned the appellant, in due time, took separate exceptions.

The appellant insists that, by the terms of the charter, the power conferred on the common council to regulate the speed of engines and cars within the city limits is limited to the regulation of their speed as they run along or across public streets and has no application to the regulation of the speed of engines and cars operated in places outside of the same. The correct interpretation to be given to this provision of the charter presents an interesting question, and one which to my mind is not free from doubt. It has not been the policy of this State, by general statutory enactments, to regulate the speed of railroad engines and cars in passing over streets and highways, or while running in other places. All railroads are required to run their engines and cars at all times and in all places with due care and caution, which rule of action is regulated by the principles of the common law. But in many instances the legislature has conferred upon municipal corporations the power to regulate the running of cars at street crossings and in other places within their territorial limits. That the legislature possesses the power to confer this authority on municipalities cannot be doubted, and ordinances which are passed in pursuance of such authorization have the force of laws passed by the legislature. (Dillon on Corporations, § 245.)

The case of *Buffalo and Niagara Falls Railroad Company* v. *City of Buffalo* (5 Hill, 209) aids in giving construction to the provisions of the charter under consideration. There, by the terms of the charter, the common council of the city of Buffalo was given power " to regulate, within the bounds of said city, the grade of railroads and the running of railroad cars." It was held that under this authority the common council could prohibit the use of steam for the running of cars within the city limits. In my judgment the charter now under consideration confers on the city of Binghamton the right to regulate the speed of engines and cars

at places within the city limits outside of the public streets. The language of the statute is so broad and general that its meaning and purpose cannot by any fair rule of construction be limited as applying only to street crossings. In large cities where the line of the railroad passes through the populous part of the same, although the tracks are laid on premises, and within inclosures, of which the railroad company is the exclusive owner, the public may be greatly annoyed and disturbed by the noise produced in running it at a high rate of speed.

We now come to the question whether the ordinance passed by the common council was in force and applicable to the speed of the engine in question, at the time and in the place where it was being used, when the deceased was injured. The language used in the by-laws plainly indicates that the common council intended to give the same a limited application in the regulation of the speed of engines and cars, and not to extend its operation to places where railroad companies are moving cars and engines in their own yards, and in and about their station grounds for the purpose of making up trains, and not actually passing through the city. If the deceased had been killed by an engine owned and operated by the Erie railroad running on this track, and under exactly the same circumstances, could the respondent have urged that the ordinance was in force at that place and under such circumstances? I think not. The appellant had the same privileges in running its engines and cars over this track as to the rate of speed as the Erie road possessed. At least it is not disclosed by the case that any restrictions were put upon the appellant by that company, as to the mode and manner in which it should use its tracks. The ordinance is in terms limited in its application, to engines and cars "while passing through said city." The public was not admitted to that portion of the grounds where the injury occurred. The right of persons to pass over the several tracks on these grounds was limited to those in the employ of the respective companies engaged in operating the engines and cars. The engine which struck Green had fully completed its trip and run through the part of the city limits traversed by the appellant's main track, and the engineer in charge had delivered to the Erie Railroad Company all the cars intended to be transferred to it from the train which had just arrived. At the time of the accident, the engine

was being removed from the yards in front of the depot buildings to the round-house situated on the appellant's grounds.

The ordinance imposes a penalty of twenty-five dollars, for every violation of its provisions. Suppose that one of the engines of the Erie Company, within the yard where this accident happened, should be moved at a greater rate of speed than ten miles an hour, could the city of Binghamton maintain an action and recover the penalty as for a violation of the ordinance? I am of the opinion that it could not, for the reason that it was not intended by the common council that the ordinance should apply to and control the rate of speed in such places. It would be most unreasonable to give the ordinance such interpretation.

As we have reached the conclusion that a new trial should be granted, for the error in instructing the jury as stated, it is unnecessary to consider whether the respondent gave proper and sufficient proof of the passage of the ordinance by the common council, as on another trial that question may not be presented. The appellant also strenuously argued that upon the whole case the plaintiff should have been nonsuited, for the reason that the deceased was guilty of negligence, which contributed to the injury. We have concluded not to pass upon that question in disposing of the case as now presented, as there must be a new trial for the error already indicated.

SMITH, P. J., concurred; BRADLEY, J., not sitting.

Judgment and order reversed and new trial ordered, costs to abide event.